STEVE A. VRETTAS,

*Plaintiff and Respondent,*

vs.

CATHERINE T. VRETTAS,

*Defendant and Appellant.*

(No. 2707; November 8th, 1955; 289 Pac. (2d) 644)

418

For the defendant and appellant the cause was submitted upon the brief of Walter A. Muir of Rock Springs, Wyoming, and Walter J. Muir, now of Cheyenne, Wyoming, and oral argument by Walter A. Muir.

For the plaintiff and respondent, the cause was submitted upon the brief of Frank R. Schofield of Green River, Wyoming, and Albert E. Nelson of Rock Springs, and oral argument by Mr. Schofield.

## OPINION

Per Curiam.

This is an action for divorce brought by the plaintiff Steve A. Vrettas against the defendant Catherine T. Vrettas. The parties will be referred to herein as in the case below.

The parties were intermarried in a Greek Church

on May 13, 1945. No children were born of the marriage. Both parties had been married before and divorced. The plaintiff is about sixty years of age and the defendant about thirty-five years of age. The plaintiff, as grounds for divorce, alleged that the defendant was guilty of indignities toward the plaintiff and also guilty of cruelty. The defendant answered and denied these allegations, and filed a cross petition charging the plaintiff with indignities toward her. On January 29, 1955, the court rendered judgment, finding the allegations of plaintiff's petition to be true, and the allegations of the cross petition as not true, and rendered judgment of absolute divorce for the plaintiff. The court also found that the defendant had by her efforts to some extent contributed toward the property of the plaintiff and that she was entitled to an amount which would equitably compensate her for such service. The court allowed her a judgment for $5,000 subject to certain deductions and also some other personal property as hereinafter more fully mentioned. The remainder of the property was given to the plaintiff as hereinafter described. The record is rather voluminous.

We have read over the testimony of the parties as to the causes of a divorce. After considering it, we have concluded that the judgment of the court in granting the plaintiff a divorce is sustained by substantial evidence and no good purpose would be subserved in reviewing it.

The second question before us is as to the division of the property. In that connection we must bear in mind the rule stated in Lovejoy v. Lovejoy, 36 Wyo. 379, 256 P. 76, 79, where we stated:

"It is conceded that in making a division of property under the statute the trial court exercises a discretion. There are no hard and fast rules to control its action. The statute does not require an equal division. A just

and equitable division is as likely as not to be unequal. The decision of the trial court should not be disturbed, except on clear grounds, as that court is usually in a better position than the appellate court to judge of the respective merits and needs of the parties."

That case has been cited and approved by us in a number of cases, including Garman v. Garman, 59 Wyo. 1, 136 P.2d 517.

Notwithstanding the rule so announced, the trial court awarded the defendant so little of the plaintiff's property that we feel impelled to consider the subject. There is little dispute in the testimony that most of the time the parties were congenial. Defendant not only helped as cashier for a number of hours almost every day in plaintiff's restaurant, but she also took care of the home, of the rooms and apartments owned by the plaintiff just as a servant and a laundry woman would. There is testimony in the record that defendant possibly married the plaintiff for convenience and that she sought to have plaintiff deed her his property or make a will in her favor, but that could not have come about wholly unexpectedly in view of the fact that plaintiff was twice the age of the defendant when he married her. Plaintiff's brother did not like the defendant. The two separated when plaintiff was married, and did not speak to each other for eight or nine years. They were reconciled in 1955, and it is not altogether improbable that the cause of the final separation of plaintiff and defendant was the reconcilement of the two brothers.

Plaintiff conducted a restaurant in Green River, Wyoming, by the name of Star Cafe. It is the contention of the counsel for defendant that plaintiff made large profits in running the restaurant. But there is also evidence in the record that for two years prior to the commencement of this action, the restaurant

was run at a loss. Defendant testified that the plaintiff concealed a lot of the profits in the basement. That is denied by the plaintiff and the court evidently credited the latter's testimony. On the other hand, while the defendant testified that all she had was bank accounts amounting to about $500, counsel for the plaintiff insinuate that in all probability the defendant has a large amount deposited in some unknown bank or banks. She had a checking account in the State Bank of Green River and also a savings account. Most of this, it would seem, came from the plaintiff, although defendant testified that some of it came from her parents and that defendant herself had $600 at the time of the marriage. It seems the total amount deposited by her in the Green River State Bank was something over $10,000. So counsel for plaintiff figures that she received from plaintiff, including the allowance made to her by the court, the sum of about $20,000, and think that is enough. There is some duplication in the bank accounts. For instance there was withdrawn one day from the savings account the sum of $1,000 and deposited in the checking account. Obviously, there is a deduction to be made of $1,000 in figuring the amount she received. Defendant testified that at one time she gave the plaintiff $800. The amounts withdrawn by the defendant consisted of numerous small items, doubtless many of them paid out for articles in the home. Some of them are comparatively large, one item, for instance of $1,000 was checked out when the defendant took a trip to Detroit, where she apparently remained for two or three months. Counsel for the plaintiff had an opportunity to cross-examine the defendant as to various amounts withdrawn by her, but they did not do so. The money evidently is gone, perhaps much of it expended on pleasure trips taken by the plaintiff and defendant. We hardly think that a wife is compelled to account to her husband for every penny she spends

during her married life. The insinuation that she has some money concealed is pure speculation. And in view of the uncertainty as to where the money deposited by her went, we hardly think that it should be considered as to what she should receive upon dissolution of the marriage.

After considering the testimony in the case, we do not think that the defendant should be left almost penniless just because the plaintiff was granted a divorce. See 27 C.J.S. 1131. In determining how much property should be allowed, we think that we are on safer ground when we disregard most of the disputed and doubtful testimony and confine ourselves as nearly as possible to the consideration of matters supported by testimony that is undisputed or nearly so.

The defendant was allowed by the trial court a Pontiac automobile, which cost $3,600 but had been used for many months and its value at the time of the trial was probably not greater than $2,500. The plaintiff does not drive a car, and it was properly awarded to the defendant. The testimony indicates that it was given to defendant in the early part of 1954, so that it was in fact owned by the defendant, though we are not certain as to the legal title thereof.

The defendant was also awarded the furniture in the house. The real property in which it is situated was given to the plaintiff, who may accordingly eject her at any time. While counsel for the plaintiff estimate its value at $1,500, yet if she were compelled to move and store it, its value would be but small. It would be of more value to plaintiff by renting the house furnished.

The court also allowed her $5,000 but deducted therefrom the amounts already paid to the defendant by way of alimony in the sum of $750 and counsel

fees in the sum of $350 (which we understand have been paid), a total of $1,100, leaving only $3,900. But that is not all. There is some confusion in the record in regard to an insurance policy. Plaintiff in his reply stated that defendant has a "10 year endowment life insurance policy." Defendant testified that she has that policy, in which plaintiff and defendant's mother are beneficiaries. (Record pp. 435, 436.) So we take it that the policy belonged to defendant. The testimony shows that the surrender value was $3,100 at the time of the trial. The policy was given to the plaintiff. Deducting the $3,100 from $3,900, above-mentioned, leaves only $800, the only amount which the plaintiff would lose.

The plaintiff at the time of the marriage of the parties was the owner of lots 1, 2 and the east 15 feet of lot 3 in block 15 in the original town of Green River. The evidence indicates that it is valuable property and in good condition. Its value at the time of the marriage of the parties was $40,000. It contains (as of now) a residence, in which there is an apartment, and an apartment house with six apartments. The house was remodeled about 1950 at the cost of $5,000, which at first was borrowed from defendant's father, but repaid, and evidently out of the earnings of plaintiff during the marriage. The apartment house also was entirely remodeled. The testimony indicates that most of the earnings therefrom were put back into the building, so that we are given to understand that at this time it is a first-class apartment building. The witness Dewey Jones, a real estate man, whose testimony we think we should accept as the most reliable, made an appraisal of the property shortly before the trial of this case. He took all the facts into consideration, including the income tax returns of the plaintiff. He found that the average income from the building for the past three years was about $5,500 per annum,

which of course, would be increased when the defendant would vacate the house. He testified that on the basis of a 6 percent return, the property was worth $91,666 and on the basis of an 8 percent return, the sum of $69,300. The plaintiff at the time of the trial owed about $8,000 or less if the plaintiff's testimony is accepted. Considering the testimony, and the fact that it is commonly known that real property has increased in value, or price, since 1945, we think a conservative way of figuring would be that the real property owned by the plaintiff is, aside from the furniture, worth at least $60,000 net after paying the plaintiff's indebtedness. One way of figuring is that all the defendant gets out of that sum is the sum of $800 as already shown. If we add all the property together, including the furniture, the Pontiac car and the insurance ($1,500 plus $2,500 plus $3,100), that would make $67,100. Out of that the defendant was awarded furniture of $1,500; Pontiac car $2,500; and $3,900 as above-mentioned, baking a total of $6,900 or a little more than 10 percent of the property of the plaintiff. And it should be remembered that the defendant was already the owner of the Pontiac car and the insurance and that the law recognizes the wife's ordinary rights to support during the pendency of a divorce action as well as to have her attorney paid in an action as is necessary.

We think that the defendant should be awarded a judgment of five thousand dollars without deduction, the Pontiac car and the insurance policy which in fact belongs to her in any event. Instead of taking the furniture at the estimated value, permit her to choose to take that, or instead take cash in the sum of $1,500 in addition to the $5,000. She should also have counsel fee for prosecuting the appeal in the sum of $250 (the amount allowed in Davis v. Davis, 56 Wyo. 524, 111 P.2d 124). The defendant should not be charged with

any rent for her occupancy of the house until the final decree of the trial court herein. Such award is little enough, but we do not feel that we should interfere with the court's discretion further.

The judgment of the trial court is accordingly modified as above-mentioned, and the court is directed to enter a decree to carry the foregoing modification in effect, and make such other orders in the case as may be necessary, not inconsistent with this opinion. As modified, the judgment is affirmed.

*Affirmed as modified.*