Roy Wesley DOWDELL, Plaintiff in Error,

v.

Betty Lou DOWDELL, Defendant in Error.

No. 42704.

Supreme Court of Oklahoma.

Oct. 7, 1969.

As Corrected Jan. 19, 1970.

Charles R. Nesbitt, Robert N. Naifeh, Oklahoma City, for plaintiff in error.

Merson, Campbell & Merson, Oklahoma City, for defendant in error.

BLACKBIRD, Justice:

The judgment involved here is a divorce decree dissolving the marriage of the parties to this appeal. These parties' order of appearance in the trial court was in reverse of what it is here, but their trial court

designations of "plaintiff" and "defendant" will be used in this opinion.

Plaintiff was granted a divorce against defendant, a physician, on the ground of incompatibility. The only property the parties then owned that had been accumulated during their marriage (other than his medical equipment, their personal effects, and two used automobiles that had been turned over to their two older daughters), consisted of an equity in a home they had purchased in Moore, its furnishings, and a Pontiac Sedan, all of which was awarded to plaintiff. By the wording of the divorce decree, defendant was ordered to pay plaintiff "in lieu of further property division and as alimony", the total sum of $150,000.00 in monthly installments.

 This alimony award is the divorce decree's only feature, of which defendant complains in this appeal. In his brief, defendant states that he is not challenging the trial court's awarding to plaintiff the proportion of the parties' property that was decreed to her; but, under his first proposition, he maintains that the ground upon which plaintiff was granted the divorce against him, i.e., "incompatibility", does not connote fault on his part, and, upon this hypothesis he further argues that the divorce was not granted "on account of the fault of the husband * * *", as the statute requires, and, consequently, the trial court had no jurisdiction to award the alimony in addition to the property. The statute defendant cites, and refers to, is Tit. 12 O.S.1961, § 1278, which, in material part, reads as follows:

"*When a divorce shall be granted by reason of the fault * * * of the husband, the wife * * * shall be allowed * * * alimony * * *;* which alimony may be allowed to her in * * * property, * * *. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, * * * the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof * * *". (Emphasis added.)

In an effort to convince us that this divorce was not granted on account of his "fault", defendant points out that there is no specific finding in the decree that he was at fault; and he advances further argument the substance of which is that, in Oklahoma, a divorce on the ground of "incompatibility" is a divorce granted *without* the *fault* of either party. We do not agree. The excerpts defendant cites from American Jurisprudence and certain Oklahoma cases do not support his contention that the divorce in this case was not one granted by reason of some fault on his part. While we recognize that divorces have been granted without determining whether either, both, or neither of the parties is responsible for the "incompatibility" (24 Am.Jur.2d, "Divorce and Separation," § 166), we think it is evident that such did not occur in this case. Here, it appears clear that the thing that precipitated the parties' estrangement and separation was defendant's association with another woman; and, though he prayed, in his answer, that the parties be divorced, after alleging that the cause of their incompatibility was plaintiff's "continual harassment", and, on the witness stand, he maintained that there was nothing improper in his association with the other woman, and gave other testimony contemplated to leave the impression that the plaintiff was groundlessly suspicious and jealous, he admitted that he may have told her he loved the other woman and was with the woman one night in a motel, though he testified he said this, just to get plaintiff "off his back" or make her quit harassing him. And it is undisputed that he did not quit seeing the woman, as plaintiff requested but, on the contrary, left home and continued seeing her afterwards.

On the basis of the parties' pleadings and evidence, and the trial court's determi-

nation that the divorce should be granted plaintiff, we cannot say that it was not granted by reason of the fault of the defendant husband. All indications are to the contrary. We recognize that incompatibility is bilateral (Hughes v. Hughes, Okl., 363 P.2d 155, 158), and has been referred to as a "two way proposition" (Chappell v. Chappell, Okl., 298 P.2d 768, 771, 58 A.L.R.2d 1214, 1217). But, regardless of whether there was factual ground for plaintiff's quite obvious belief as to the nature of the defendant's association with the other woman, it is clear that what she believed to be its nature did not conform to, and was not compatible with, her conception of how a faithful husband should conduct himself. We cannot say that her attitude was unusual or unnatural, or that she is to be faulted, or blamed, for finally reaching the point where she found that association intolerable, and for this apparent reason, finally joined in the parties' agreement that a divorce was the only solution to their incompatibility and discord.

■ The decree which was entered in this case during July, 1967, ordered defendant to pay the $150,000.00 in monthly installments of $500.00 each, until paid in full, with the following proviso: "* * * provided that the same shall terminate upon and in the event of the death of the plaintiff, prior to the payment of the same in full." Under his "PROPOSITION II", to the effect that the quoted proviso renders the alimony's sum indefinite and dependent upon a contingency which may, or may not, occur (prior to full payment), defendant argues that the alimony award is void and contrary to the rule enunciated and followed in Trosper v. Trosper, Okl., 308 P.2d 320; Vanderslice v. Vanderslice, 195 Okl. 496, 159 P.2d 560, and other cases. He recognizes that the award would be valid under H. B. No. 836, enacted by the Thirtieth Legislature (S.L.1965, Chap. 344 § 1, p. 603; Tit. 12, O.S.1965, Supp., § 1289), if the proviso in question had declared that his payment of monthly payments of alimony should cease on plaintiff's death *or remarriage*. But he says, in effect, that since it did not provide for cessation of such payments in the event of *either* contingency, the decree cannot be saved from application of the rule in the cases cited. Defendant seeks to support his theory of the Legislature's intention in the 1965 enactment by pointing to said Law's 1967 amendment (Tit. 12, O.S.1967 Supp., § 1289), which, among other things, authorizes courts, in divorce decrees entered after December 31, 1967, providing for periodic alimony payments, to designate "all or a portion of each such payment as support * * *", and requires such decrees to specify that such support payments "shall terminate * * * upon the death of the recipient" and also provides for their termination upon the recipient's remarriage, unless certain court procedure occurs. In this connection, see 50 Am.Jur., "Statutes", § 427, at footnote 11.

On the other hand, plaintiff says that the Vanderslice case is not applicable to this one, and that H. B. No. 836 allows the divorce court the discretion of determining whether he will declare the obligation to make future installments of alimony terminate only upon the recipient's death, or whether he will declare that it terminates only upon his, or her, remarriage; and that the statute does not require the declaration to include both contingencies of death *and* remarriage.

There are statements in the briefs of both parties concerning the subject of whether the statute uses the word "or" in its disjunctive, or in its conjunctive, sense (see State ex rel. Caldwell v. Hooker, 22 Okl. 712, 98 P. 964, 971, and 50 Am.Jur., "Statutes", §§ 282 and 283); but we think we need not enter into a detailed discussion as to that, in order to conclude that if our previous decisions discussed in the briefs were intended to render invalid an award of alimony whose amount of future payment is governed by the length of time the recipient lives, then the enactment of H. B. No. 836 removes such an award from the scope of their application and effect. Therefore, having determined it un-

necessary to decide whether or not the word "or", as used in the subject statute, is to be given a meaning equivalent to the word "and", we hold that the award of alimony in the present case is a valid one.

■ All of the rest of defendant's arguments are concerned, either directly or indirectly, with the size of the alimony award. His position generally is that it is excessive, for various reasons which we shall not detail.

The undisputed facts are that the parties were married in July, 1949; that, at the time of the trial, defendant was 39 years of age and plaintiff was 38, and that they had three daughters, aged 17, 13 and 10, respectively, and one son of the age of 15 years. When the couple were married, defendant was in chiropractic school, from which he graduated about three years later in 1952. After practicing as a chiropractor in two small communities in Oklahoma, he decided to take pre-medical courses in 1957, and in 1959 entered O.U. Medical School, from which he graduated in 1963. Defendant thereafter began practicing medicine in July, 1964, and, according to plaintiff's undisputed testimony, she was employed outside the couple's home on various secretarial jobs, earning from $250.00 to $300.00 a month during approximately eight, of the previous twelve, years, taking little time out from such employment except that necessary to give birth to, and help rear, the couple's above named children, and, all this time, applying her earnings to assist the defendant in paying the family expenses and the cost of his education. The couple purchased the above mentioned Moore residence (awarded to plaintiff as aforesaid) for a price of $22,-500.00, in December, 1964 using a trade-in allowance on their previous Northeastern Oklahoma City home as a down payment. To pay the balance of the new home's purchase price, and to defray other expenses incurred in furnishing and improving it, the couple negotiated a 30-year loan, secured by a mortgage on the property. The month before the trial, the balance due on this loan was $21,698.00, which was being defrayed by monthly payments of $171.28, a part of which went into escrow for defrayal of taxes and insurance premiums.

Features of the decree not complained of herein gave plaintiff custody of the couple's four minor children, and directed defendant to pay the Court Clerk the sum of $150.00 per month per child for their support and maintenance, such payments for each child to terminate when he, or she, reached majority. Thus, the total monthly payments of alimony and child support, required of defendant by the decree, amounted to $1,100.00, until Janice, the eldest child, became 18 years of age in April, 1968; then this total sum decreased to $950.00 per month until the next oldest became of age. Presumably plaintiff must pay, out of the sum coming to her each month, the above mentioned monthly payment of $171.28 on the home loan, of which said obligation, the decree relieved defendant. As above indicated, defendant makes no claim that the expenditure of $150.00 per month will not be required to defray the necessary expenses of each child. When the monthly alimony payment, decreed to plaintiff, defrays the monthly home loan payment she is obligated to make, it will be seen that she will have a balance of only $328.72 per month with which to defray all of her other expenses, including maintenance of the used family Pontiac. This is approximately the same amount of alimony we approved for Mrs. Henley to receive from her physician husband, until she reached the age of 60 years, in Henley v. Henley, Okl., 428 P.2d 258. There, as here, the couple's joint efforts contributed to obtaining the husband's medical education and to rearing their children. Here however, instead of being disabled, as was Mrs. Henley at the time of her divorce, plaintiff is still able-bodied and has resumed working outside the home; but the record shows that defendant's earnings result in his having an annual income of about three times that of Dr. Henley. As we have determined that plaintiff was granted the divorce from defendant by rea-

son of his fault, it can neither be held that plaintiff was not entitled to alimony as a matter of right, nor that the purpose some courts have attributed for awarding alimony to a wife, granted a divorce, without fault on the part of her husband, namely: to keep her from being destitute, or a public charge, applies here, (in this connection, see Eisenreich v. Eisenreich, Okl., 323 P.2d 723, Good v. Good, 79 Idaho 119, 311 P.2d 756, 761–763, both incl., Vrettas v. Vrettas, 74 Wyo. 417, 289 P.2d 644, and the annotation at 34 A.L.R.2d 313, 335, ff.); and plaintiff is entitled to receive alimony in a sum more commensurate with the mode of living to which she has become accustomed as defendant's wife. The much discussed present-day revolution in morals has not yet reduced the importance of the family unit in our civilized society, or changed our mores, to the extent that the public, or the courts, look with favor upon a husband who would discard his wife and faithful helpmate for many years, and who is the mother of his children, for another woman to whom he owes no similar obligations or fealty. When he seeks to do this, because of no legally-recognized fault on his wife's part, he should not expect to be freed from his financial obligations to her, especially when, as here he seems to want her to be able to rear his children in the ambitious, and somewhat indulgent, manner and atmosphere, that were provided during the marriage. To defendant's credit, he has always seemed to want to discharge such obligations to the best of his ability; and, when the couple separated, he voluntarily agreed to pay plaintiff the sum of $800.00 per month, and was paying her that sum, in addition to paying the above mentioned home loan payment, and the installment payments on the family Pontiac and a Comet (one of the hereinbefore mentioned autos given the daughters), besides the fuel and maintenance bills on these cars. Substantially the same arrangement was continued during the pendency of the action, by an ex parte order the court issued upon the filing of plaintiff's verified petition at the beginning of the action, but same was thereafter modified by an agreement between the parties, made effective by court order, reducing the pendente lite payments from $800.00 to $500.00 per month, for the months of May, June, and July 1967, but continuing defendant's obligation to make the above mentioned payments, as well as automobile insurance premiums, and "all bills except home utilities", in addition.

The trial of this case seemed to concern itself—not so much with whether defendant was to continue paying plaintiff—but with how much he could afford to pay her, in view of his income and current expenses, and financial obligations already incurred. The mass of evidence introduced on these subjects included a so-called "Condensed Statement of Operations" (introduced as "Plaintiff's Exhibit I") of the medical clinic operated by defendant, and three other doctors, showing that his services to patients there had earned a total of $54,419.55 in fees during the first six months of the year 1967. Defendant testified that, from this amount of gross charges on the clinic's records, his share of its operating expenses, in the sum of $20,904.92, must be deducted, and, of the remainder of his total fees, in the amount of $33,514.63 a certain percentage would be uncollectible. He further testified, however, that, of his fees for the month of June, 1967, 80% were collected; and defendant identified Plaintiff's Exhibit II as a Financial Statement, dated May 31, 1967, that he had caused his accountant to make for him to a bank in the city in which he now practices. This Statement represented defendant as having $4,000.00 in cash in the bank and "Accounts Due Me (all good)" of $24,477.89, and "Amounts received from Salary, Wages, or Professional Practice" for the first five months of 1967, as $28,507.99. He admitted that this indicated that he had average earnings "in the neighborhood of $5700.00 per month", but he further testified that the figures in the Statement "were probably ballooned in an attempt to obtain a better financial picture." The evidence further indicated that defendant is making payments on an

eighty-three-hundred-dollar bank loan, plus two education loans, and the Comet loan, all of which total $11,400.00, and that he pays a rental of $175.00 per month on a 1967-model Cadillac Convertible, which he testified he leased shortly before this action was filed, on the assumption that it would give him a tax "write off something like 85%", and which form of transportation he needed "in order to establish the doctor image equal to that of my colleagues".

There is an indication that, on the basis of the evidence, the trial court concluded defendant had a net annual income of $39,500.00; and, after thoroughly examining the record, we cannot say that such a conclusion is not amply supported by the evidence, or that said court's determination that defendant should pay plaintiff $6,000.-00 annually is clearly against the weight of the evidence, or constitutes an abuse of discretion. We have considered all of the arguments defendant urges under the first three sub-propositions of his "Proposition III", but have found in them no ground for holding that the trial court's award to plaintiff was excessive, or that, for any reason there advanced, we should disturb same.

█ Under a fourth sub-proposition, defendant contends he is entitled to credit for all alimony payments he has made pending this appeal. The provision for alimony pendente lite contained in the order of May 8, 1967 expired by its own terms at the end of July, 1967. The judgment was rendered July 17, 1967. Plaintiff's request for a supersedeas bond was denied. The alimony payments made since the end of July, 1967 have been in compliance with the judgment rendered on July 17, 1967, and plaintiff is entitled to credit for these payments against the total amount of alimony awarded in the judgment.

█ Counsel for plaintiff in her brief have requested an additional allowance of attorney's fees for services on appeal and for the costs of printing the brief. The necessary defense of the appeal required legal research and the preparation, and printing, of a brief for presentation. The plaintiff is granted an additional $1,000.00 for attorney's fee, which sum shall include the cost of printing the brief. 12 O.S.1961, § 1276; Lavender v. Lavender, Okl., 435 P.2d 583.

As we have found no valid ground in any of the arguments advanced by defendant for modifying or reversing it, the judgment and decree of the trial court is hereby affirmed.

IRWIN, C. J., and WILLIAMS, LAVENDER and McINERNEY, JJ., concur.

DAVISON, JACKSON and HODGES, JJ., dissent.