**Susan Marie MOORE,**
**Appellant (Defendant),**

v.

**Jerry Wayne MOORE,**
**Appellee (Plaintiff).**

**No. 90–198.**

Supreme Court of Wyoming.

April 12, 1991.

Micheal K. Shoumaker, Sheridan, for appellant.

Wayne R. Wilson, Michaels & Michaels, Gillette, for appellee.

Before URBIGKIT, C.J., THOMAS, CARDINE and GOLDEN, JJ., and KALOKATHIS, District Judge.

THOMAS, Justice.

The primary issue to be resolved in this case is whether the record manifests an appropriate foundation to justify the entry by the district court of a contempt order against a wife in a divorce proceeding. The order of the district court was premised on the failure of the wife to comply with the provisions of the decree. Related questions are suggested concerning the provisions of the decree and the relative obligations of the parties to comply with them. We hold that the order finding the wife in contempt of court was premature under the circumstances of this case, and we reverse that order. We remand the case to the district court for further proceedings in accordance with our opinion.

Appellant, Susan Marie Moore (wife), presents this summation of the issues:

"A. Did the district court lack jurisdiction for this contempt order?

"B. Must the contempt be related to a court order?

"C. Can contempt be established without prior notice to the defendant [wife]?

"D. Did the district court abuse his discretion in determining the facts?

"1. Were the defendant's actions 'wilful'

"2. Do the facts establish the value of the feed lien at $6,801.33"

In response, the appellee, Jerry Wayne Moore (husband), states the following issues:

"I. Should this appeal be dismissed because appellant/defendant made no good faith effort to comply with the order that formed the basis of the contempt order?

"II. Did the district court have jurisdiction at the order to show cause hearing since the original court order was still on appeal with the Wyoming Supreme Court?

"III. Was the contempt related to a court order?

"IV. Was contempt established without prior notice to the defendant?

"V. Did the trial court abuse its discretion in making a decision based on the evidence presented?

"A. The defendant's acts were clearly willful.

"B. The value of the feed and storage lien was clearly established at $6,801.33."

On May 26, 1989, the husband filed a complaint in the district court in which he sought a divorce. The parties had separated on May 24, 1989. After a trial to the court, which was based in significant part upon a stipulation of the parties, the district court entered the decree of divorce on October 12, 1989, granting custody of their only child to the father. The wife appealed from that decree, and that appeal was docketed in this court on November 22, 1989. The appeal from the decree of divorce is resolved by the opinion of the court in *Moore v. Moore*, 809 P.2d 261 (Wyo.1991).

On December 19, 1989, the husband filed a motion for an order to show cause why the wife should not be held in contempt of court. The husband alleged that the wife had failed to comply with the decree of divorce in that she had not given the clothing and personal effects of the parties' minor daughter to the husband; had not given the husband one-half of the family photo albums; had not turned the tax records over to the husband so that he could complete the 1987 and 1988 income tax returns for the parties; and had not given the husband the registration papers for five horses that were determined to be his property in the divorce decree. On December 26, 1989, the district court issued its order to show cause why the wife should not be held in contempt of court.

The wife admitted to the court that she had not furnished all the documents she had in her possession to her former husband, but she advised that she had given him the horse registration papers, checking account records for taxes, and family photographs. She counterclaimed for relief alleging that the husband was in violation of the terms of the divorce decree. Her petition alleged some half dozen violations of the decree but, so far as this appeal is concerned, the only significant ones were that the husband had not given her the livestock awarded to her by the divorce

decree and that the husband had placed a lien on her livestock as well as on a port-a-barn that had also been awarded to her. The wife further claimed that the husband had failed to pay her monies that she should have received pursuant to the divorce decree and that, as a result, she was unable to pay to have her property removed from the husband's ranch where it was located.

The cross-petitions came on for hearing on March 19, 1990, but the district court decided to continue the hearing in order to afford the parties additional time to reach a settlement since it appeared that they were moving in that direction. In the decretal portion of the order entered April 11, 1990, the district court directed the wife to cooperate in resolving the tax issues and then continued the case, stating:

"4. The remaining matters before the court, including but not limited to division of property, division of bank accounts, division of pictures, transfer of livestock, payments of the parties' bills and liens placed on the livestock, not resolved by the parties prior to the hearing scheduled for May 23, 1990, will be heard at that time.

"5. This matter shall be continued until 10:00 A.M., on May 23, 1990. If either party does not comply with this order and has not cooperated in resolving the above matters prior to the hearing to be held in this matter on May 23, 1990, that person will be held in contempt of court."

On June 25, 1990, the district court entered an order finding that the wife was in contempt of court. In pertinent part, that order stated:

"1. The defendant, Susan Marie Moore, has willfully refused to transfer possession of Tiffany Moore's saddle as ordered by the Court in the Decree of Divorce.

\*   \*   \*   \*   \*   \*

"4. The Court finds that the livestock in question was the property of Susan Marie Moore pursuant to the Decree of Divorce issued by this Court on September 15, 1989 and that the defendant has never asked for possession nor attempted to gain possession of these livestock in any manner.

"5. The Court finds that the defendant is not trapped between two liens as is claimed by the defendant.

"6. The Court finds that plaintiff's lien was not filed until November 22, 1989, giving defendant adequate time to move her livestock.

"7. The Court finds that defendant's claim that the horses and sheep are not in good condition will not be addressed, since even if these allegations were proven true, it is defendant's fault for not taking care of them and leaving them on the plaintiff's ranch.

"8. The Court finds that the fees charged by plaintiff for feed, pasture and storage are reasonable, but does not rule on the validity of the lien itself." [1]

Consistent with the foregoing findings, the district court held that the wife was in contempt of court and, to purge herself of the contempt citation, directed that she deliver Tiffany's saddle to the husband and remove her livestock and personal property from the ranch within ten days of the order. The district court also ordered that the wife could not sell, or otherwise dispose of, her livestock because there were liens pending against it. In addition, the district court ordered that the wife could not remove her port-a-barn from the husband's ranch because he had a secured interest in it to assure payment of the feed bill that he had incurred as a result of keeping the wife's cattle for several months. This appeal is taken by the wife from that order.

█ Initially, the wife attacks the jurisdiction of the district court to entertain the husband's motion for an order to show cause. It is her contention that the court was without jurisdiction because of the fact that the case was pending on appeal in this court. We do not agree with this argument. The general rule appears to be that an appeal in a divorce matter serves to

---

1. The district court made no ruling with respect to the validity of the lien because the lien already had been made the subject matter of a separate lawsuit. On the day prior to the May 23, 1990 hearing, the husband filed suit to execute on that lien.

deprive the district court of jurisdiction to conduct any further proceedings, or make any further orders, in regard to the divorce. *See* cases cited in 27B C.J.S *Divorce* § 283 (1986). Other cases cited in the encyclopedia in connection with this proposition, however, acknowledge significant exceptions to this rule. For purposes of this appeal, we need only recognize that a district court has the right and the power, during the pendency of an appeal, to enforce its decree and to protect the parties as to any rights which the decree gave to them. That is precisely what the district court endeavored to do in this instance, and we hold that the district court had jurisdiction to consider the motion by the husband for an order to show cause. We note that we frequently are confronted with appeals in divorce cases in which additional proceedings are being continued in the district court. In almost all instances, we have adopted the view that such additional proceedings, which are collateral to the issues presented in the appeal and which do not affect the issues on appeal or the outcome of the appeal, may be conducted in the district court even while the appeal is pending in this court. We hold that the district court did have jurisdiction to address the cross-petitions presented below.

Relying upon *Connors v. Connors,* 769 P.2d 336 (Wyo.1989), the husband next argues that this court should dismiss the appeal because the wife has not made a meaningful, good faith effort to comply with the district court's orders. We address this issue initially because, if we were to agree with the husband, we could apply the bright line rule adopted in *Connors.* Ultimately, we will hold, however, that the district court's finding of contempt is fatally flawed, and it is not necessary for us to evaluate the case under the *Connors* rule. Furthermore, the husband appears to concede, in his brief, that the wife did comply with the directives of the district court, although this is not a matter that can be established by the record.

The district court found that the wife was in contempt of court because she failed to turn Tiffany's saddle over to the husband. There is some divergence between the oral comments of the district court and the written order ultimately entered on the matter of contempt. From the bench, the district judge advised that the contempt was for the failure to deliver the saddle *and* the failure to remove the wife's property from the husband's ranch. As has been noted, the divorce decree awarded to the wife her horses and sheep, two mobile homes, and a port-a-barn. The written order, however, finds that the wife is in contempt only for failure to deliver the saddle, but it requires her to deliver the saddle and, in addition, remove her property from the husband's ranch in order to purge herself of contempt.

The earlier order of the district court, entered on April 11, 1990, which threatened the parties with contempt if they did not obey that order and cooperate in resolving the other outstanding issues, made no mention of Tiffany's saddle. The record discloses that the wife did obey all of the specific provisions of the April 11, 1990 order. No provisions of that order threatened the husband, except he was required to cooperate in working out the remaining issues between the parties. On the record, the district court really addressed the April 11, 1990 order to the wife only and not to the husband.

■ Our examination of the divorce decree discloses that no specific mention is made of a requirement that the wife give Tiffany's saddle to the husband. The decree does state that the husband shall receive Tiffany's clothes and personal effects. While it may be reasonable to assume that the wife should have understood this language to include Tiffany's saddle, we conclude that more specificity is required for the purposes of a contempt citation than reliance on an assumption of understanding. Contemptuous acts are willful and calculated acts. The husband claimed that Tiffany had no saddle and, therefore, her ability to work and enjoy recreation on the ranch was impeded. The wife explained that the saddle in question was not a working saddle, but a silver encrusted show saddle. She advised that she had retained the saddle because she

had planned to have Tiffany compete in show events during her periods of visitation, and she assumed that Tiffany would not need that saddle at the ranch.

■ The wife's obligation to remove her property from the husband's ranch is equally indefinite so far as the decree of divorce is concerned. The decree provides that the property is hers, but it does not establish a time for removal. It was not until the day that she was held to be in contempt that the wife had a definite deadline for removing her property. The wife's testimony at the hearing, which was uncontradicted, demonstrated that she could not feasibly remove her property from the ranch immediately following the decree. Arrangements had to be made for pasturing and care of the livestock. The trailers could not be moved until spring and, even then, they could not be moved until they were repaired and the vegetation removed from around them. The port-a-barn could not be obtained until the husband's lessee removed his property and vacated it and, in addition, until the husband released his lien. Simply put, there are no facts or circumstances of record that justify the district court's finding of contempt and it is, therefore, vacated. *See Bard Ranch Company v. Weber*, 557 P.2d 722 (Wyo. 1976).

■ The last issue to be resolved is whether the finding by the district court that the feed bill and the liens against the wife's livestock, as well as her other personal property, were supported by sufficient evidence and were reasonable. In addressing this question, we adhere to our usual rule that the division of property is within the sound discretion of the trial court, and we do not interfere with its disposition unless we are persuaded of a clear abuse of discretion. *Kennedy v. Kennedy*, 761 P.2d 995 (Wyo.1988). With respect to this issue, the district court ruled from the bench, after the hearing held on July 24, 1990, on the motion for the order

to show cause. The court justified its ruling on the basis that the wife was not trapped between two liens as she claimed. Her position, presented to the court on that occasion, was that her attorney had a lien on much of her property and her husband had liens on the remainder of her significant assets. She claimed that, as a result, she was unable to liquidate any property so as to pay the expenses of moving her livestock and other personal property. The district court dismissed this argument by reasoning that the lien of the attorney did not prevent her from removing her property from the husband's ranch.

In our view, the ruling of the district court begged the question. The wife did not claim that the lien of the attorney prevented her from moving the livestock and other property. She claimed that the effect of the lien was to prevent her from obtaining funds through sale of the property, or by borrowing against the property, so as to be able to pay the expenses of moving the cattle, trailers, and port-a-barn. The district court found that she had never asked for possession of the property awarded to her in the divorce. We do not retreat from our standard that the district court is the arbiter of the credibility of witnesses when it is the fact finder, but the finding under these circumstances is unfathomable.

The district court stated at the hearing that the husband's lien was filed on November 22, 1989, "more than two months after the property was awarded to [wife]." The divorce decree, however, was entered on October 12, 1989, so the lien was filed just a bit more than one month after that decree—not more than two months. Finally, the district court held that the husband had no responsibility for maintaining the wife's property in good condition (she had alleged that many of the cattle were undernourished and otherwise neglected).[2] We know no rule of law that would permit the husband to abuse or neglect the ani-

---

**2.** The photographs that the wife furnished of some of the animals graphically illustrate that they were undernourished and suffering, in at least one case, from multiple injuries. These

photographs are not consistent with the claim of the husband that he had fed, stabled, watered, and cared for the livestock.

mals under the circumstances presented by this case. *See* Section 6–3–203(b) W.S. 1977, and Sections 11–29–101 to –113, W.S. 1977. It is our perception that the husband and wife have chosen to use the child and other issues as pawns in their divorce war, and it appears that the husband decided to make cannon fodder from the wife's animals as well. In light of all these circumstances, we hold there is no substantial evidence in this record to support the order of the district court. *Kennedy,* 761 P.2d 995; *Vrettas v. Vrettas,* 74 Wyo. 417, 289 P.2d 644 (1955).

The decree of divorce that the court entered and the record on appeal are so devoid of the necessary detail and specifics that it simply was not possible for the district court, nor is it possible for this court, to sort out the issues that continue in the controversy between these parties. For that reason, it becomes necessary to remand the case to the district court for a complete accounting. The district court has the responsibility and the authority to ensure that both parties to a divorce are protected from imposition, unfair practice, or undue advantage. Section 20–2–112, W.S.1977; *Kennedy v. Kennedy,* 456 P.2d 243 (Wyo.1969); *see* cases cited in 27A C.J.S. *Divorce* § 10 (1986). In this instance, the division of property itself is ill defined but, more importantly, no time limits were established for the wife to obtain her property; nor was there any requirement specifying responsibility for the care and maintenance of the animals and the safekeeping of the property pending its removal from the ranch. *See* cases cited 27C C.J.S. *Divorce* § 585 (1986).

There is nothing in the decree, or in the facts and circumstances demonstrated by the record in this case, to suggest that the wife did not remove her property within a reasonable period of time after the decree was entered. Likewise, there is nothing in the decree to suggest that the husband could, in fairness or reason, begin charging the wife for keeping her livestock the day the oral pronouncement of the decree of divorce was furnished. Also, it is evident from the record that the port-a-barn had been leased by the husband to a third party. Not only was the wife unable to move the barn under such circumstances but, likely, she is entitled to the income from that lease from the date of the decree until the barn was available to her.

Thus, it is necessary now that the husband furnish a complete, accurate, and independent accounting for all of the property that was awarded to the wife under the divorce decree. As an incident to an award and division of property, a district court may require an accounting. *See Picchi v. Picchi,* 100 So.2d 627 (Fla.1958); *DuPree v. DuPree,* 158 Fla. 439, 28 So.2d 907 (1947). The accounting is made necessary because it is not clear from the record that the wife received all that she was entitled to under the divorce decree, especially in terms of proceeds of sales of property, distribution of trust funds, hay and oats, and the return of her livestock in a satisfactory condition. (This summary listing is not intended to include all of the items in dispute; it will be necessary for the accounting to include all items that are in dispute.) The parties may agree that the husband need not make an accounting with respect to that property the wife unquestionably now has in her possession, for example: her pickup, horse trailers, tack, and, apparently, the livestock,

In our earlier decision of this case, we held that the wife had not demonstrated that the property division was inequitable. Should the accounting demonstrate that the wife has been deprived of property in a way that would cause the court to conclude that she did not, in fact, receive an equitable share of the marital estate, the court is free, in the exercise of its equitable powers, to adjust the division of property as may be necessary to effectuate the divorce decree in a reasonable and equitable manner. That approach would be required only in the event that a settlement cannot be reached by the parties. We also note that this is a case in which the district court left the parties with their financial affairs so entangled as to virtually guarantee the problems that have arisen. Such entanglements should be avoided unless

they serve an important purpose. *Kane v. Kane*, 577 P.2d 172 (Wyo.1978), *aff'd* 616 P.2d 780 (Wyo.1980), and 706 P.2d 676 (Wyo.1985); Annotation, *Divorce: Propriety of Property Distribution Leaving Both Parties with Substantial Ownership Interest in Same Business*, 56 A.L.R.4th 862 (1987).

The order of the district court is reversed, and the case is remanded to that court with directions that it should vacate the citation of contempt against the wife, and require an accounting by the parties of the property subject to division by the decree of divorce. Because of a real possibility in this case that the failure of the parties to comply with the terms of the decree relating to the division of property may have resulted in the frustration of an equitable division of the property of the parties, the trial court, in the exercise of its equitable powers, is free to conduct such additional proceedings as it deems necessary to effectuate the divorce decree in a reasonable and equitable manner.