**Susan Marie MOORE, Appellant (Defendant),**

v.

**Jerry Wayne MOORE, Appellee (Plaintiff).**

No. 92–11.

Supreme Court of Wyoming.

July 29, 1992.

Rehearing Denied Aug. 19, 1992.

James P. Castberg, Sheridan, for appellant.

Wayne R. Wilson and Kathryn J. Edelman of Michaels, Michaels & Wilson, Gillette, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT,* and GOLDEN, JJ.

MACY, Chief Justice.

We are asked to review a judgment on a lien. The bailee, Appellee Jerry Wayne Moore, filed the lien against livestock for reimbursement of feed and storage costs. Appellant Susan Marie Moore filed a counterclaim and argued that the livestock which were the subject of the bailment did not receive proper care.

We affirm.

* Chief Justice at time of oral argument.

Ms. Moore presents the following issues for our review:

I. The trial [c]ourt erred in failing to grant [Ms. Moore's] Motion For Joinder.

II. The trial [c]ourt erred in denying [Ms. Moore's] Motion For Judgment for [Ms. Moore] on [Mr. Moore's] Complaint at the end of the ... presentation of [Mr. Moore's] case.

III. The trial [c]ourt erred in entering the Order and Judgment For Lien in favor of [Mr. Moore] and against [Ms. Moore] in the findings by the [c]ourt;

(i) that feed and storage liens began to accrue October 12, 1989,

(ii) that [Ms. Moore] had no Counterclaim or merits for proving such Counterclaim or that there were any damages derived from acts or omissions to act by [Mr. Moore],

(iii) that the evidence presented clearly established an involuntary bailment of [Ms. Moore's] animals with [Mr. Moore] and that [Mr. Moore] was only held to a standard of care requiring that he not commit waste,

(iv) that [Mr. Moore] did not commit waste upon [Ms. Moore's] animals,

(v) that [Mr. Moore] was not required to give the same degree of care to [Ms. Moore's] animals that [Ms. Moore] would have and,

(vi) that [Ms. Moore] was negligent and [Mr. Moore] was not.

Mr. Moore and Ms. Moore were granted a divorce on October 12, 1989. *Moore v. Moore*, 809 P.2d 255, 256 (Wyo.1991). The district court divided the marital property, awarding to Ms. Moore, among other things, ten horses, a five-stall porta barn, all sheep and lambs on the ranch, oats, one-half of the hay on the ranch, and one-half of the proceeds from the sale of eleven sacks of wool. When Mr. Moore took possession of the ranch, Ms. Moore did not have a place to keep her livestock. *Id.* at 257. Therefore, she left the livestock on Mr. Moore's ranch.

Mr. Moore filed a lien for feed and storage costs he incurred during the period Ms. Moore left her livestock on his ranch. He filed a lien enforcement action on May 21, 1990, which alleged that he had repeatedly asked Ms. Moore to remove her property from the ranch. The complaint requested a judgment and an order directing that the property be sold at a public or private sale pursuant to Wyo.Stat. § 29–7–105 (Supp. 1991) and that the proceeds be used to pay the costs of the sale and for feed, pasture, and storage expenses. In the alternative, Mr. Moore requested a judgment against Ms. Moore for costs, attorney's fees, and interest.

Ms. Moore answered the complaint and filed a counterclaim, alleging that Mr. Moore did not allow her to take possession of her property despite her repeated requests. She counterclaimed for $15,000 in damages to her registered quarter horses, claiming that they did not receive proper care, and for $100,000 in damages to her herd of brood mare quarter horses, arguing that Mr. Moore failed to properly care for and breed her brood mares. She also claimed damage to her sheep herd and a loss resulting from damage to the sacks of wool she left on the ranch.

After hearing the evidence, the court found that Ms. Moore was not entitled to any damages on her counterclaim and that Mr. Moore was entitled to a judgment on his lien in the amount of $4,100. A timely notice of appeal followed.

### Motion for Joinder

During the proceedings before the district court, Ms. Moore filed a motion to have the lien action joined with the divorce action. Ms. Moore argued that the cases should be joined because the issues and the property were the same and the cases were so similar that they could be determined in one trial. Having separate hearings, Ms. Moore argued, would result in a needless duplication and waste the court's and the parties' time. Ms. Moore also contended that, since this Court required an accounting of the property awarded in the divorce action, it would be helpful to have the accounting and the lien action joined.

Although she did not cite it in her original motion, Ms. Moore now cites W.R.C.P.

18[1] as support for her joinder argument. At the time Ms. Moore made her joinder motion, that rule provided in pertinent part:

(a) *Joinder of claims.*—A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party.

While this rule allowed parties to bring multiple claims in one action, it did not require that subsequent related claims be joined.

In addition, W.R.C.P. 42[2] made it clear that the joinder of claims and joint trials were matters entirely within the district court's discretion. Prior to its revision, that rule stated:

(a) *Consolidation.*—When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

(b) *Separate trials.*—The court in furtherance of convenience or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

The rules were permissive and simply stated that the district court "may" order consolidation or separation of the claims, but the district court was not "required" to do either. That decision lay exclusively within the district court's evaluation of what would be most convenient and what would avoid prejudice. W.R.C.P. 42 provided the district court with discretion, and no abuse of that discretion exists in this case.

While Ms. Moore is correct in arguing that similar properties were at stake in both proceedings, that fact alone does not require joinder. The properties involved in

the two actions were not identical, even though they overlapped. *Moore,* 809 P.2d at 256–57. In the divorce action, the issue concerned the division and ownership of the marital property. The lien action had nothing to do with the question of ownership. Ms. Moore's ownership was never disputed. The question in the lien action was whether Mr. Moore was entitled to recover for taking care of Ms. Moore's livestock.

The judgment in the lien action does not affect Ms. Moore's right to have an accounting made of the divorce decree property. We previously reviewed the property division made pursuant to the divorce decree and found that it was just and equitable. *Id.* Our remand of the case for an accounting in the divorce action does not undercut that determination. *Id.* Ms. Moore suffered no prejudice from the two actions remaining separate.

## Motion for Judgment

After Mr. Moore presented his case, Ms. Moore moved for a judgment in her favor. She argued that this Court's decision in the divorce action addressed the issues before the district court in the lien action and that, therefore, the divorce action made those issues res judicata. The district court denied her motion. To determine if the doctrine of res judicata applies, we examine the actions for the following factors:

(1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; [and] (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them.

*CLS v. CLJ,* 693 P.2d 774, 775–76 (Wyo. 1985). *See also DLB v. DJB (Paternity of JRW),* 814 P.2d 1256, 1265 (Wyo.1991); and *Newell v. Trumper,* 765 P.2d 1353, 1355 (Wyo.1988). Application of this test demonstrates that the divorce decree litigation did not render the lien action res judicata. Under the first two factors, although the

---

**1.** Revised effective March 24, 1992.

**2.** *See supra* note 1.

parties were identical, the actions did not involve the same subject matter.

This Court stated, in the context of res judicata, that a party cannot litigate "issues which could have been presented in the previous suit." *DLB*, 814 P.2d at 1265. This statement proves that the doctrine of res judicata is not applicable here. The issue before the district court in the lien action could not have been litigated in the divorce action. Mr. Moore could not have litigated the question of what his duty and remedies might be if Ms. Moore did not remove her livestock in the future. Ms. Moore could not have raised a cognizable claim in the earlier action by arguing that her animals might not receive proper care from Mr. Moore if she did not move them off the ranch. Nor could those issues stemming from the accounting which this Court ordered on remand in the divorce action have been presented. The divorce decree resolved the issue of ownership of the livestock, not the duty of care owed by Mr. Moore to the livestock in the event they remained on his ranch. The lien action was not precluded by the doctrine of res judicata.

In the divorce action, we reviewed the divorce decree only for purposes of examining the contempt citation. We did not review its provisions in light of these issues which developed later and are presented here. The final judgment from the divorce decree or the accounting would not have served as a final judgment which would be conclusive of the rights of the parties in this separate appeal. We noted in the divorce action that the district court had not ruled on the validity of the lien in the separate action. *Moore*, 809 P.2d at 257 n. 1. Our decision in the divorce action, therefore, could not have had a res judicata effect upon the present lien action. The district court did not err when it denied Ms. Moore's motion for a judgment as Mr. Moore's lien action was not barred by the doctrine of res judicata because of the divorce judgment.

In making her argument, Ms. Moore quotes from our opinion in the divorce action where we stated, "There is nothing in the decree, or in the facts and circumstances demonstrated by the record in this case, to suggest that the wife did not remove her property within a reasonable period of time after the decree was entered." *Id.* at 260. The facts relative to this case have changed since we made that statement. This record indicates that more than a reasonable period of time passed before Ms. Moore removed her livestock. The district court's findings and the record indicate that no alternative arrangements were made for the livestock within a reasonable time and that, therefore, the lien was justified. Our review of the record does not reveal any error in this finding.

## The District Court's Findings

Ms. Moore challenges particular findings made by the district court. In considering the sufficiency of the evidence:

[W]e assume the evidence in favor of the successful party to be true, leaving out of consideration entirely the evidence in conflict therewith, and giving to the evidence of the successful party every favorable inference that can be reasonably and fairly drawn from it. The findings of fact made by the trial court are presumed to be correct, and we will not disturb such findings unless they are inconsistent with the evidence, clearly erroneous or contrary to the great weight of the evidence.

*Crawford v. Crawford*, 828 P.2d 1192, 1193 (Wyo.1992). The district court's findings were not inconsistent with the evidence or erroneous.

The district court did not err in finding that feed and storage costs on the lien began to accrue on October 12, 1989, the date the written divorce decree was filed, even though the oral pronouncement of the divorce occurred on September 14, 1989. Ms. Moore received a one-month grace period. Thus, the district judge allowed a reasonable time.

■ Ms. Moore argues that the district court erred when it dismissed her counterclaim and decided that she had not proven damages. She was not able to substantiate the amount of profit she lost as a result of

Mr. Moore's treatment of her show horses, and she was not able to prove damages with respect to her brood mares. Although the photographs introduced into evidence showed a rather dramatic change in the condition of the horses, they were counter-balanced by testimony. Vic Rivera testified that horses bite each other and establish a pecking order and that the bites which were evident on the horses were not a cause for concern. He also testified that Mr. Moore fed and watered Ms. Moore's livestock and cared for them as well as he did his own livestock. Deborah Reno testified that it was difficult to constantly keep show horses in "show" condition. All district court findings were supported by the record.

■■■ The district court determined that an involuntary bailment arose when Ms. Moore left her property on Mr. Moore's ranch without obtaining his consent. The district court correctly ruled that the fact that Mr. Moore later filed a lien against Ms. Moore's property in order to be reimbursed for feed and storage costs did not change the nature of the bailment. *See Minnehoma Financial Company v. Pauli*, 565 P.2d 835, 840 (Wyo.1977). Regarding the standard of care owed by an involuntary bailee, the district court ruled:

> As an involuntary bailee, Mr. Moore had an absolute duty to return the bailed property, which he stood ready to do throughout the bailment and ultimately did. During the bailment, involuntarily or otherwise, he had a duty to care for the animals. In an involuntary bailment the standard of care merely requires that the bailee not commit waste. One person ought not be permitted to impose upon another the care of property and at the same time complain that the latter failed to care for the property as an owner would.

*Cf. Waggoner v. General Motors Corporation*, 771 P.2d 1195, 1199–2000 (Wyo.1989); and *Horn v. State*, 556 P.2d 925, 927 (Wyo. 1976). The court's determination was supported by the record. Although Mr. Moore did not exercise the same degree of care with the livestock which would have been exercised by Ms. Moore, he exercised sufficient care to satisfy his duty as an involuntary bailee.

In addition, the district court found:

> 3. Mrs. Moore was negligent in failing to remove her property and in failing to oversee and, if necessary, supplement the care given her horses. Also, in failing to timely remove them.

> 4. Mrs. Moore's negligence exceeded that of Mr. Moore.

Since Ms. Moore was not able to substantiate any significant damages, the district court did not err in concluding that Mr. Moore did not commit waste in caring for her personal property. The district court found that Ms. Moore should have supplemented the care given to the animals rather than waiting until the lien action was commenced and then complaining about the care which was being provided. Testimony from Mr. Rivera and Ms. Reno supported the district court's findings. Despite Ms. Moore's claim that practical problems existed which prevented her from removing the animals, these excuses did not change her duty. No clear evidence was presented which demonstrated that Mr. Moore denied her access to the ranch. The district court was correct in concluding that Ms. Moore was negligent in not removing her property or making alternate arrangements for the care of her livestock.

Although Ms. Moore did not extensively argue the sheep issue in her brief, we conclude that the district court's findings with respect to letting the undocked male lambs run with the ewes were supported by substantial evidence. Ms. Moore was occupying the ranch during at least a portion of the time during which the lambs should have been docked. Thus, she was partly responsible for not getting her lambs docked. The district court's findings and judgment are amply supported by the record in this case.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

This is the third time Susan Marie Moore has asked for justice from the Wyoming judiciary. Again, it is denied. I propose that it is high time for us to start over. We could ignore the established status of Jerry Wayne Moore's family, the ex parte contacts with trial judges, and the decision making by attribution of association to only one party and simplistically determine how justice has been served for Mrs. Moore, as she has been in litigation with overwhelming odds against her.

In *Moore v. Moore*, 809 P.2d 261 (Wyo. 1991) (*Moore I*), Mrs. Moore lost custody of her daughter despite clear unethical conduct by the trial court with the decisional process unquestionably heavily weighed against her because of the name of the family of Mr. Moore, and lost the appeal because of the name of the person with whom she had briefly engaged in an extramarital affair. This came by resolution in the decision to take custody away from Mrs. Moore, who the evidence showed to have an unblemished record of care for her young daughter and demonstrated that Mr. Moore was emotionally unstable and a developing alcoholic.

One is deeply tempted to believe, with recognition of what has happened to Mrs. Moore, that we should all be reminded that he who is without blame should only then cast the first stone (if ever). My concern in my dissent in *Moore I* has not since been ameliorated by the passage of time nor by the continued course of events of oppression against the nearly defenseless mother.

In *Moore v. Moore*, 809 P.2d 255 (Wyo. 1991) (*Moore II*), this court found that the same trial judge, now departed from this state, was in error after awarding the least removable property in the settlement possible to Mrs. Moore (a porto barn and horses needing feed) and then granting a contempt citation against Mrs. Moore for failure to remove what little portion of the division of property she was granted when she had no proper place for their relocation and no money.

Finally, we now get the case back again based upon the further failure of Mrs. Moore to remove that modest property she was awarded in a timely manner resulting in an agister lien against her in behalf of Mr. Moore who was awarded the ranch property and most assets in the divorce. This lien occurs when an accounting and proper resolution of the divorce decree division, in itself, has not yet been accomplished by final payment by Mr. Moore to Mrs. Moore for certain items of ranch produce to which she should have been entitled. I am not so sure how a ranch wife who is divorced by her abusive husband loses her child, is thrown off of the ranch and then, when she leaves within those circumstances, can be negligent in failure to immediately relocate her horses in the face of a lien that has been established by the divorcing husband as an adjunct to the divorce litigation.

Obviously, justice has still never been achieved for Mrs. Moore. I do not believe the monthly charge was reasonable, that the lien was proper, or absolution of an effective conversion was justified by granting the co-litigant a lien for retention of her division of the property.

As we get to this decision, what is determined? A joinder with the yet pending divorce issues was denied so that Mrs. Moore was faced with not one but two continuing lawsuits. This is true even though the events were clearly conjunctive and intrinsic to the divorce proceeding. We still have, waiting in the wings, identical issues of a character not completely discernable from these three records involving questions of Mr. Moore's duty, apparently yet uncompleted, to provide an accounting to Mrs. Moore.

I dissent in denied justice here. I find gross abuse of discretion in the denial of joinder in permitting completely identical subjects to be divided into separate litigative processes and fail to find a proper legal basis for the original or later establishment of a lien under the circumstances demonstrated in this record. With issues here presented that should have remained for composite resolution in the divorce court, we have only magnified the problems and further diminished any opportuni-

ty for fairness and equivalency to be achieved by Mrs. Moore.

I consequently dissent and unhappily anticipate that this case will sometime hereafter reappear as *Moore IV*. Custody of children, division of property, enforcement of a fair or unfair property division, arrangement for post-divorce decree possession and responsibility for livestock are intrinsic factors in a single transaction that cannot be segmented like electoral campaign promises which vary day-by-day.

Justice has not been a visitor to the person or abode of Susan Marie Moore in this tragedy of divorce court litigation.

I respectfully dissent.